## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL GOFF** | **CIVIL ACTION** |
| **VERSUS** | **NO.  07-3010** |
| **TERRY TERRELL, WARDEN** | **SECTION "A"(2)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Darrell Goff, is incarcerated in the Allen Correctional Center in

Kinder, Louisiana.[2]  Goff was indicted in Orleans Parish for the second degree murder

of Tyrell Washington.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the

facts of the case in pertinent part as follows:

> Ms. Janice Rollins, a state's witness, admitted that at the time of trial she
> was in custody, but she denied that she had been offered anything for her
> testimony.  Rollins said she has prior convictions for possession of cocaine in
> 1997; additionally, she has a conviction for possession of cocaine in 1996, and
> convictions for crime against nature in 1995 and 1994.  (Rollins was sentenced
> in January of 1998 as a multiple offender to thirty months at hard labor).  On June
> 14th about 5 a.m. Rollins was waiting for a bus near the Glenrose Motel on Chef
> Menteur Highway when she saw the defendant drive up over the curb and onto
> the sidewalk before parking near the motel.  She became nervous and crossed the
> street.  The defendant got out of the car and walked into the motel parking lot.
> Rollins next heard cursing and then saw the defendant shoot the victim in the
> motel parking lot.  Frightened, she turned to walk away, and then she heard
> another shot and began to run.  She heard footsteps behind her and saw that the
> gunman was running up the other side of the street.  He dropped something as he
> ran.  Rollins stopped running near a bowling alley, and the gunman crossed the
> street toward her.  She described him as "sweating so much . . . like he was in
> shock or something.  He was saying he couldn't believe he did it."  Rollins asked
> if he was all right, and when he told her he wanted a cold drink, she gave him
> change to buy a Coke from a nearby machine.  He took off his black t-shirt and
> dropped it in the grass.  She commented that someone would see it there, but he
> just repeated, "I don't believe I did this."  When a man on a bicycle peddled by,
> the defendant asked him to go by the motel and see what was happening there.
> A man Rollins knew drove by and offered her a ride, which she accepted.  She
> passed the Glenrose Motel and noticed that the police were everywhere.  She got
> out of the car and sat nearby with a friend.  She commented to the friend,

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 4, Indictment, 7/24/97.

> You know that nigger still standing up the street. . . . You know he
> done killed that boy, and he's still standing up there. . . . He ought
> to get away from here.

A police officer overheard her statement and asked her to repeat it.  She pointed
out that the gunman was in front of the bowling alley, and she described him as
wearing a black shirt and jeans.  When the officer found the man wearing a white
shirt and jeans, she directed the officers to the spot where the black shirt could be
found.  On cross-examination, Rollins was asked why when she first gave a
statement to the police she did not say that she saw the shooting, and she
answered that she did not want "to get him [the defendant] in trouble."  Rollins
was also asked if she had been "loaded" that night, and she admitted that earlier
in the evening she had been but that she was not at the time of the murder.  She
stated that a few days after the crime she called Detective London and told him
she had seen the crime.  The defense attorney asked her what the district attorney
was giving her in return for her testimony, and denied being given anything.  She
said she had fifteen more months of jail time.  Rollins admitted she was a "four
time loser" but maintained that she did not deserve life imprisonment for being
a drug addict.

The defendant's statement made to Detective London was played for the
jury; the statement opens with the detective reading the <u>Miranda</u> rights to the
defendant and asking the defendant if he understands those rights; the defendant
signed a statement indicating he understood his <u>Miranda</u> rights.  The detective
then asked the defendant to explain what happened at the Glenrose Motel.  The
defendant said that he had gone to bed on the night of June 13th knowing his
girlfriend was out but expecting her to return home by 2 a.m.; however, when he
woke up at 4:15 a.m. and found that she was not at home, he beeped her, and she
returned his call and mentioned "problems."  He thought he heard someone trying
to take the telephone from her.  He left his home on Hamburg Street, and, while
driving at the corner of Dwyer and Downman Streets, he was carjacked.  He
described being beaten up by two men who took his car.  He had no idea who the
carjackers were, and he did not call the police.  He walked two blocks to the
Glenrose Motel where his girlfriend was.  He found his car parked in front of the
motel, and he described what happened when he arrived at the motel; he said:

> the window was broken . . . so I was trying to get in there to her .
> . . the dude was laying outside . . . and I was trying to get her . . .
> and then she ran off and . . . then she just disappeared out the blue.
> . . .

The defendant called his mother and asked her to come get him.  He walked a few
blocks to the Jacks Motel where he bought a soft drink and spoked with a woman
who gave him a cigarette.  The police arrived just as the defendant's mother drove
up.  While the police were interviewing him, his girlfriend came by and

3

"identified" him as "being a suspect."  When asked if he knew the victim, the defendant answered that he did not, but he did recognize the man's red Cadillac and was aware that the victim was the former boyfriend of his girlfriend.

(footnotes omitted)  State Record Volume 2 of 4, Louisiana Fourth Circuit Court of Appeal Opinion, 2001-KA-0444, pages 3-6, July 11, 2001; State v. Goff, 797 So.2d 192 (La. App. 4th Cir. 2001) (Table).

Goff was tried before a jury on November 19, 1998, and he was found guilty of the lesser offense of manslaughter.[4]  At a hearing held on August 31, 1999, the state trial court found Goff not guilty as a multiple offender and sentenced him to serve 35 years in prison.[5]  Goff's counsel notified the court of the intent to appeal, but failed to file a timely written notice as directed by the state trial court.

Accordingly, Goff's conviction became final five days later, on September 8, 1999, because he did not file a written notice of appeal or seek reconsideration of his sentence.  See Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La.

---

[4]St. Rec. Vol. 1 of 4, Trial Minutes, 11/19/98; St. Rec. Vol. 2 of 4, Trial Transcript, 11/19/98.

[5]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 8/31/99; Multiple Bill, 12/1/98; St. Rec. Vol. 2 of 4, Transcript of Multiple Bill Hearing, 8/31/99.  The record also reflects that Goff's counsel filed a motion for judgment of acquittal on July 29, 1999.  St. Rec. Vol. 1 of 4, Motion for Judgment of Acquittal, 7/29/99; Minute Entry, 7/29/99.  The record does not contain a resolution to this motion.

Code Crim. P. art. 914[6]); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period less than seven days).[7]

More than 10 months later, on July 13, 2000, Goff's counsel filed a motion for leave to file an out-of-time appeal from the conviction and sentence.[8]  The state trial court granted the motion and set a return date of September 26, 2000.[9]

Almost five months after that date, on February 15, 2001, Goff's counsel filed a second motion for leave to file an out-of-time appeal.[10]  The state trial court again granted the motion and set another return date of May 3, 2001.[11]

On appeal, Goff's counsel argued that the evidence was insufficient to support the verdict of manslaughter.[12]  On July 11, 2001, the Louisiana Fourth Circuit affirmed the

---

[6]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because this statutory amendment occurred well after petitioner's sentencing, it is inapplicable to this case.

[7]Monday, September 6, 1999, was Labor Day.

[8]St. Rec. Vol. 2 of 4, Motion for Out-of-Time Appeal, 7/13/00.

[9]Id.; St. Rec. Vol. 1 of 4, Minute Entry, 7/13/00.

[10]St. Rec. Vol. 1 of 4, Minute Entry, 2/15/01; Trial Court Order, 2/15/01.

[11]Id.

[12]St. Rec. Vol. 2 of 4, Appeal Brief, 2001-KA-0444, 4/3/01.

5

conviction and sentence finding no merit to the claim.[13]  On September 21, 2001, the

court also refused the rehearing requested by Goff.[14]  The Louisiana Supreme Court

denied Goff's subsequent writ application without reasons on August 30, 2002.[15]

Two years later, on August 30, 2004, Goff's counsel submitted for filing an

application for post-conviction relief raising six grounds for relief:[16] (1) The grand jury

selection process in Orleans Parish was unconstitutional or susceptible to abuse, so as to

deny the defendant his right to equal protection and due process of law by systematically

excluding African-Americans from service on the grand jury. (2) La. Code Crim. P. art.

413(C) is an unauthorized local law. (3) The holding in Deloch v. Whitley, 684 So.2d

349 (La. 1996), is not an appropriate procedural bar. (4) The petitioner was deprived of

his right to effective assistance of counsel because his counsel failed to file a pretrial

motion to quash the indictment. (5) The indictment was fatally defective on its face. (6)

The State withheld exculpatory evidence.

---

[13]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2001-KA-0444, 7/11/01; State v. Goff, 797 So.2d 192 (La. App. 4th Cir. 2001) (Table).

[14]Id. at p. 10; St. Rec. Vol. 2 of 4, Petition for Rehearing, 2001-KA-0444, 7/16/01.

[15]St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2001-K-2817, 10/22/01 (hand delivery 10/22/01); State v. Goff, 823 So.2d 940 (La. 2002); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2001-K-2817, 8/30/02.

[16]St. Rec. Vol. 1 of 4, Application for Post-Conviction Relief, 8/30/04.

The state trial court denied the application on July 15, 2005.[17]  The court held that the evidence was insufficient to find that the State had withheld exculpatory evidence. The court also found that claims regarding the grand jury selection process and the indictment were barred from review because Goff had not filed a pretrial motion to quash.

Counsel thereafter timely sought review of the claims in the Louisiana Fourth Circuit.[18]  The court denied the application without reasons on August 26, 2005.[19]  Goff's counsel also submitted an untimely[20] writ application to the Louisiana Supreme Court, which was denied without reasons on May 26, 2006.[21]

---

[17]St. Rec. Vol. 1 of 4, Judgment, 7/15/05; Application for Post Conviction Relief (order on first page), 8/30/04

[18]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2005-K-1305, 8/11/05.

[19]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2005-K-1305, 8/26/05.

[20]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's ruling to mail or file a timely writ application in the Louisiana Supreme Court.  Goff's counsel hand delivered the application on December 5, 2005, which was after the 30 day period.

[21]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 05-KP-2447, 12/5/05; State v. Goff, 930 So.2d 15 (La. 2006); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2005-KP-2447, 5/26/06.

II.     FEDERAL HABEAS PETITION

On June 18, 2007, Goff filed a pro se petition for federal habeas corpus relief raising three grounds for relief:[22] (1) He was denied equal protection and due process rights based on a discriminatory grand jury selection process. (2) He was denied effective assistance of counsel because his counsel failed to file a motion to quash the fatally defective indictment. (3) The State intentionally withheld favorable evidence.  The State filed a response in opposition to the petition, alleging that Goff's federal petition was not timely filed.[23]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[22]Rec. Doc. No. 3.

[23]Rec. Doc. No. 9.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Goff's petition, which, for reasons discussed below, is deemed filed in this federal court on May 18, 2007.[25]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

My review of the record reflects that Goff's petition is not timely filed, and his petition should be dismissed on that ground.

---

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Goff's petition was filed by the clerk of court on June 18, 2007, when the filing fee was paid.  Goff did not date his signature on the petition or the supporting memorandum.  He dated his signature on the pauper application submitted with the petition, and it is dated May 18, 2007.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.    <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[26]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Goff's conviction became final on September 8, 1999, when he did not timely file a notice of appeal or seek reconsideration of his sentence.  The fact that he was granted an out-of-time appeal does not change the finality of his conviction for purposes of the AEDPA's limitation period.  <u>Salinas v. Dretke</u>, 354 F.3d 425, 430 (5th Cir.), <u>cert. denied</u>, 541 U.S. 1032 (2004) (the granting of a request for out-of-time review tolls the AEDPA limitations period but it does not restart the running that period); <u>see also</u>,

---

[26]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

McGee v. Cain, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004) (applying Salinas rationale to Louisiana out-of-time writ application).

Thus, under a literal application of the statute, Goff had until September 8, 2000, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Goff has not asserted any reason that might constitute rare or exceptional circumstances why the one-year limitations period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of

11

"exceptional circumstances" described in recent decisions.  See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-

conviction proceedings.  Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly

described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held

that because this statute is a tolling provision, the time during which state court post-

conviction proceedings are pending must merely be subtracted from the one-year

limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 125 S.

Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the

end of the matter' for purposes of § 2244(d)(2)");  Williams v. Cain, 217 F.3d 303, 306-

307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999));

Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  The timeliness consideration in

Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

As stated above, Goff's conviction became final on September 8, 1999. The one-year limitations period began to run on the following day, September 9, 1999, and did so for 308 days, until July 13, 2000, when Goff's counsel filed the first motion for an out-of-time appeal. Under a generous application of the law, the limitations period remained tolled from that date until August 30, 2002, when the Louisiana Supreme Court denied the writ application following the out-of-time appeal.

Under this liberal calculation, the AEDPA filing period began to run again on August 31, 2002, and did so for the remaining 57 days, until October 26, 2002, or the next business day, October 28, 2002, when it expired. Goff did not file any other pleadings or seek state post-conviction or other collateral review in the state courts until two years later, on August 30, 2004, when his counsel filed an application for post-conviction relief in the state trial court.[27] This later filed writ application has no effect on the timeliness calculation. Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000). Further, this two-year filing hiatus is sufficient alone to establish that Goff's federal petition is not timely before this court.

Goff's federal petition is presumed filed on May 18, 2007, four years and almost seven months after expiration of the AEDPA filing period. Thus, his petition should be dismissed as time-barred.

---

[27]St. Rec. Vol. 1 of 4, Application for Post Conviction Relief, 8/30/04.

15

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Darrell Goff for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____16th_____ day of October, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

16